**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JASON JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-3929 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| JASON KEEHMA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER**

Jason Jones drove to his daughter's elementary school and spotted his former love interest, the child's mother, in the parking lot. Before long, the police arrived, and Jones ended up in the back of a squad car.

Things went downhill when Jones refused to give his name to an officer who tapped on his car window. Jones got arrested, and was later charged with obstruction of justice. The case lasted about two years, but the state eventually dropped the charges.

Jones didn't let it go. He filed a complaint as a *pro se* litigant against the officer, bringing three malicious prosecution claims under state and federal law. The officer, Jason Keehma, moved to dismiss.

For the following reasons, the motion to dismiss is granted in part and denied in part.

**Background**

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Before diving in, the Court starts with an overarching observation, and a bit of a preview. This Court read the complaint, and then read the documents attached to the motion to dismiss. By the look of things, there might be more to the story. Stay tuned.

But for now, the only storyteller is the plaintiff, and the only script is the complaint.

In September 2021, Jones drove to his daughter's elementary school in Shorewood, Illinois. *See* Am. Cplt., at ¶ 2 (Dckt. No. 15). He arrived an hour before school finished so he could wait for her. *Id.* at ¶ 7.

Jones wasn't the first to arrive. Jones spotted the child's mother, Toni Pittman, in the parking lot, sitting in a BMW. Pittman was with her mother (meaning the child's grandmother). *Id.* at ¶ 9.

Maybe Jones and Pittman had good chemistry at one point. But by the sound of things, all that's left is bad blood. Sometimes that happens.

Jones apparently had an inkling that things might not go smoothly. When he arrived at the school, Jones was on the phone with his girlfriend and her friend. He wanted them on the line as witnesses to hear how things were about to unfold. *Id.* at ¶ 8 ("The plaintiff intentionally had two witnesses on the phone due to the continuous detrimental conduct from the child's mother.").

At some point, Pittman left her car and spoke with two women outside the school. *Id.* at ¶ 10. Pittman's mother stayed in the car. *Id.* at ¶ 9.

Jones got out of his car, too, and approached Pittman. Sparks started to fly.

Jones and Pittman had a tense conversation about Jones's desire to see his child. Jones asked why she had a problem with him seeing their daughter. *Id.* at ¶ 12. Pittman responded that Jones could speak with his daughter over the phone. *Id.*

Things spiraled downward. Jones asked to see the child then and there. *Id.* at ¶ 13.

Pittman refused. Pittman accused Jones of being AWOL for the last five years, claiming that he never answered her calls. According to the complaint, that statement was false. *Id.*

Pittman told Jones that if he wanted to see his daughter, he would need to go to court. *Id.* at ¶ 14. That response didn't land well. Jones told Pittman that she had a mental disorder, and then went back to his car. *Id.* Pittman went back to her car, too. *Id.* at ¶ 15.

That wasn't a great start to a routine pickup at an elementary school. But five minutes later, things continued to go south.

Several SUVs from the Shorewood Police Department soon pulled up. *Id.* at ¶ 16. Jones didn't know why the police were there. *Id.* at ¶ 17. He stayed in his car. *Id.*

Jason Keehma, a detective, got out and spoke with Pittman and her mother. *Id.* at ¶¶ 17–19. The officer then walked over to speak with Jones, who remained in his car. *Id.*

As the complaint tells it, Keehma was "aggressive and confrontational." *Id.* at ¶ 19. He demanded to see Jones's identification. Jones refused. *Id.* at ¶¶ 19–20. Jones said that he didn't have to provide any identification because he didn't commit a crime. *Id.* at ¶ 20.

That response didn't land well. And it didn't exactly deescalate the situation.

Keehma threatened to arrest Jones, but didn't explain why. *Id.* at ¶ 21. Keehma then walked back to Pittman's vehicle, and gathered information about Jones. *Id.* at ¶ 22. Keehma and two other officers ran a background check, but didn't spot any active warrants or other problems. *Id.* at ¶ 23.

Keehma returned to Jones's car for the second time, and addressed Jones by name. *Id.* at ¶¶ 24–25. This time, Jones acknowledged his name. *Id.* at ¶ 26. The officer once again asked Jones for identification. *Id.* Jones refused to hand it over. *Id.* at ¶ 27.

Instead, Jones thought it would be a good idea to turn the tables. He asked the officer for *his* identification. *Id.* at ¶ 28. By the sound of things, it was the opposite of "I know you are, but what am *I*?" It was "I know who I am, but who are *you*?"

Keehma refused to give his identification, and walked away. *Id.*

Five minutes later, Keehma came back, for a third and final time. *Id.* at ¶ 31. Meanwhile, Jones was still on the phone with his girlfriend and her friend, who were listening and witnessing everything telephonically. At some point, they started recording the call on their end. *Id.* The complaint includes quotes from the recording.

The officer asked Jones for his license, but Jones refused. *Id.* at ¶ 33. He said that he hadn't broken the law. *Id.* at ¶ 32. Keehma threatened to arrest Jones for obstruction. *Id.* at ¶ 35.

Discretion is the better part of valor. At that point, it might have been a good idea for Jones to fork over his license. But Jones decided to take a different approach.

Jones rolled up his car window. *Id.* at ¶ 36.

The officer then started punching the window, and demanded that Jones get out of the car. *Id.* at ¶ 37. Jones refused. *Id.* at ¶ 38. Things continued to get testy. The officer threatened to bust the window and pull Jones out. *Id.* at ¶ 40.

The officer and Jones then got into a constitutional dialogue, exchanging their perspectives on the Fourth Amendment. Jones asked the officer if he had a warrant, and Keehma responded that he didn't need one. *Id.* at ¶¶ 41–44. The officer told Jones that he was under arrest for obstruction. *Id.* at ¶ 44.

At long last, Jones got out of his car. Before long, he ended up in a squad car. The officer placed Jones under arrest and took him to the police station. *Id.* at ¶ 45. Keehma wrote an incident report and a criminal complaint, and charged Jones with obstruction. *Id.* at ¶ 47.

The case lasted 27 months. Eventually, the case was dismissed in December 2023.

Jones responded by suing Keehma, bringing three malicious prosecution claims. He brings one claim under state law, and two claims under federal law. One of the federal claims alleges an unlawful seizure under the Fourth Amendment. The other federal claim alleges a deprivation of parental rights under the Fourteenth Amendment, based on bond conditions imposed by the state court. *Id.* at ¶ 85.

Keehma moved to dismiss.

As you'll remember, this section started with a bit of a teaser. This Court promised that there might be more to the story. Here it is.

Defendant attached documents to the motion to dismiss. One of the documents is an order from the Circuit Court of Cook County, from January 2020. *See* Order (Dckt. No. 24-2). That order suspended Jones's parental rights. *Id.*

The order gave a reason, too. The Circuit Court suspended his parental rights "out of care for the safety of the minor child until Mr. Jones is apprehended by law enforcement." *Id.* There was an "outstanding body attachment (3rd) for Mr. Jones." *Id.*

Defendant also attached the incident report about the arrest of Jones in the parking lot. *See* Incident Report (Dckt. No. 24-1). According to the report, Pittman told Keehma about the order from the Circuit Court of Cook County when the officer first arrived on the scene. In fact, she even gave the officer a copy before the officer spoke with Jones. *Id.*

The incident report goes on to say that, at the police station, Jones admitted that the Circuit Court had suspended his parental rights. *Id.* at 2. Jones "said the judge in his family court case does not have authority over him. The judge is not allowed to deny his visitation to [the child] because it is against the [C]onstitution." *Id.*

So, by the look of things, there is another side to the story. But as this Court will explain, a motion to dismiss is not the time to tell it.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

4

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

Defendant moved to dismiss all three malicious prosecution claims. The Court will start with the state-law claim, and then will turn to the two federal claims.

## I.      The State-Law Malicious Prosecution Claim

The first claim is a malicious prosecution claim under state law.

Under Illinois law, a malicious prosecution claim has five elements: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996); *see also Lund v. City of Rockford*, 956 F.3d 938, 949 (7th Cir. 2020).

The motion to dismiss makes two arguments. The first argument is that Keehma had probable cause to bring charges. The second argument is that the criminal case did not terminate in a manner that suggested that Jones was innocent.

### A.      Probable Cause

The first argument is about the existence of probable cause. Keehma argues that the complaint fails to state a claim because he had probable cause to arrest and charge Jones for obstruction of justice.

As the motion to dismiss tells it, Keehma knew about the court order that suspended Jones's parental rights. Keehma argues that he had probable cause for the arrest because he was simply enforcing a court order. *See* Brf., at 5–8 (Dckt. No. 24). Keehma contends that he had probable cause to bring charges for obstruction because Jones refused to cooperate when Keehma investigated a domestic disturbance and a potential violation of a court order.

The notion that Jones violated a court order is a central pillar of the motion to dismiss. The first sentence of the motion makes that very point: "In violation of a court order suspending his parental rights, Jason Jones drove his vehicle to Troy/Shorewood Elementary School and demanded to see his daughter." *Id.* at 1.

That argument runs into a problem, at least for now. Keehma might be right on the underlying merits. Long term, he may not have a substantive problem. But at this early stage, there is a procedural problem.

A motion to dismiss is about the sufficiency of the complaint. And here, the complaint itself makes no mention of the court order suspending Jones's parental rights. Maybe the existence of the court order is another part of the story. But it's not the story told in the complaint, which is the only story that matters at the motion-to-dismiss stage.

Strictly speaking, a district court is not always limited to the four corners of a complaint when addressing a motion to dismiss. At the motion-to-dismiss stage, a court may consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013).

A district court can consider "outside exhibits that are central to the plaintiff's claim and referred to in the complaint, even if supplied by the defendants." *See Andersen v. Vill. of Glenview*, 821 F. App'x 625, 627 (7th Cir. 2020). Courts can acknowledge court orders, too, even if they're not part of the complaint. "Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts." *See Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

Hypothetically speaking, this Court could take judicial notice of the order from the Circuit Court of Cook County, suspending Jones's parental rights. But there are two problems.

For starters, the order is from January 2020, and Jones was arrested in September 2021. Maybe the order from January 2020 was still in effect in September 2021. Or maybe not. This Court doesn't know.

More importantly, even if the order remained in effect in September 2021, the mere existence of that order isn't a basis for dismissal. This Court could look up the docket in the Circuit Court of Cook County, and figure out if that order remained on the books.

But the existence of the order isn't enough. What matters is whether Detective Keehma knew about the order before he arrested Jones.

Taking judicial notice of the existence of the order doesn't answer that question. The order doesn't matter unless Keehma knew about the order. And there is no way for this Court to take judicial notice of whether Keehma knew about it.

Keehma points to his incident report in his motion to dismiss. That incident report does say that Pittman told Keehma about the order before Keehma spoke with Jones. "Just prior to this incident I spoke with Toni [Pittman] about her ex-boyfriend Jason Jones. During that conversation Toni [Pittman] provided me with a Cook County Court Order which stated Jason's visitation with his daughter [name omitted] was suspended until further notice." *See* Incident Report, at 1 (Dckt. No. 24-1).

According to the incident report, Keehma asked Jones about the court order while Jones sat in his car before the arrest. "I asked Jason [Jones] if he had any court paperwork stating that

he was allowed to visit the child. Jason [Jones] said yes. I asked Jason [Jones] to see the paperwork. He said no." *Id.*

Courts can take judicial notice of some documents. But that rule does not apply to police reports. *See, e.g.*, *Mays v. Dart*, 974 F.3d 810, 824 (7th Cir. 2020); *see also Michon v. Ugarte*, 2017 WL 622236, at *3 (N.D. Ill. 2017) (collecting cases).

Police reports are not sources of indisputable accuracy. *See Michon*, 2017 WL 622236, at *3 (collecting cases). "[T]he factual allegations contained in the police reports do not become matters of public record suitable for consideration on a motion to dismiss." *Blackwell v. Kalinowski*, 2009 WL 1702992, at *2 (N.D. Ill. 2009).

True, the complaint does refer to the incident report itself. *See* Am. Cplt., at ¶¶ 47, 52, 61, 78, 89, 99, 109 (Dckt. No. 15). But Jones didn't allege that the contents of the report were true. Instead, the complaint simply alleges that Keehma authored the report, and got the ball rolling on the prosecution.

Down the road, the claim may run into trouble.

If the officer knew about the court order, then the officer may have had reasonable suspicion to believe that Jones was violating that order. If the officer had reasonable suspicion, then the officer had a basis to perform an investigatory stop. *See Jones v. Clark*, 630 F.3d 677, 684 (7th Cir. 2011).

If Jones refused to cooperate with an investigatory stop, then the officer could have had probable cause for obstruction. After all, the obstruction statute applies to any "authorized act," and an "authorized act" includes investigatory stops. *See Walker v. City of Aurora*, 2025 WL 2098711, at *8 (N.D. Ill. 2025); *see also* 720 ILCS 5/31-1(a).

If the officer knew about the court order, then the officer may have had probable cause for the arrest and for charging Jones with obstruction. If the officer had probable cause, then Jones has no claim. The existence of probable cause is a complete defense to a malicious prosecution claim. *See Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016).

That argument will have to wait. The only thing on the table is the complaint. As things stand, the complaint makes no mention of the court order. The complaint alleges that the officer had no basis to ask Jones for his identification. There might be another side to the story, but a motion to dismiss isn't the time to tell it.

The complaint itself does not establish the lack of probable cause. So, for now, the claim survives.

### B.     Termination of the State Court Case

The other argument is about the termination of the state court case.

Under Illinois law, a malicious prosecution claim requires a showing that the criminal case ended in favor of the plaintiff (meaning the defendant in the criminal case). *See Logan v. Caterpillar*, 246 F.3d 912, 924 (7th Cir. 2001). But a plaintiff can't bring a malicious prosecution claim simply because he prevailed in a criminal case. Illinois law requires a showing that the demise of the criminal case was "indicative of the innocence of the accused." *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996).

In the motion to dismiss, Keehma argues that Jones didn't prevail in the criminal case on the merits. He prevailed because the case was dismissed *nolle prosequi*.

A "plaintiff must do more than rely on the fact that a criminal case was dismissed *nolle prosequi*." *See Zhang v. Schuster*, 2022 WL 615015, at *22 (N.D. Ill. 2022). Instead, there must be "a reason to conclude that the dismissal via *nolle prosequi* was indicative of innocence." *Id.* at *23.

"For purposes of a malicious prosecution action, the plaintiff has the burden to prove that the *nolle prosequi* was entered for reasons related to his innocence." *Lund v. City of Rockford*, 956 F.3d 938, 949 (7th Cir. 2020) (citing *Swick*, 662 N.E.2d at 1243). "Only when a plaintiff establishes that the *nolle prosequi* was entered for reasons consistent with his innocence does the plaintiff meet his burden of proof." *Swick*, 662 N.E.2d at 1243.

So, a *nolle prosequi* order might be consistent with innocence, but not always. The Supreme Court of Illinois gave a laundry list of examples of when a *nolle prosequi* does not indicate innocence. The dismissal is not indicative of innocence "when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id.*

The Seventh Circuit added that a "bare *nolle prosequi* order, which does not state the reasons behind it, is insufficient to establish that the proceedings were terminated in the plaintiff's favor." *See Lund*, 956 F.3d at 949.

Here, Keehma points out that the court dismissed the case against Jones because a complaining witness failed to appear, not because Jones was innocent. To make that point, Keehma attached a copy of the docket sheet from the state court case.

There is some dissonance in the case law about whether a dismissal suggests innocence when the witness was not available or did not appear for some other reason. Some cases say that a dismissal based on a lack of a complaining witness can indicate innocence. *See Edwards v. Vill. of Park Forest*, 2009 WL 2588882, at *6 (N.D. Ill. 2009) ("[A] reasonable jury could infer that the lack of probable cause was itself the reason for the officers' failure to appear."); *Mahaffey v. Misner*, 2009 WL 2392087, at *3 (N.D. Ill. 2009) (deciding that the failure of complaining witness to appear "supports a finding of a favorable termination"); *Garcia v. City of Chicago*, 2012 WL 601844, at *10 (N.D. Ill. 2012) ("[W]here a malicious prosecution plaintiff presents evidence that the prosecutor abandoned a charge because the complaining witness failed

to appear for trial, a reasonable jury could conclude that probable cause was lacking and therefore that the dismissal was indicative of innocence.").

But plenty of cases go the other way. *See Bonds v. Frazier*, 2014 IL App (1st) 123601-U, 2014 WL 6908148, at *8 (2014) (*nolle prosequi* order following the death of a complaining witness did not indicate innocence); *Coleman v. Vill. of Evergreen Park*, 2017 IL App (1st) 161492-U, 2017 WL 3927569, at *5 (2017) (*nolle prosequi* order after the victim refused to cooperate and testify was not consistent with innocence); *Simenson v. City of Joliet*, 2019 WL 3716868, at *9 (N.D. Ill. 2019) (*nolle prosequi* order entered after a witness became unavailable, and the state court refused to continue trial, did not indicate innocence); *Deng v. Sears, Roebuck & Co.*, 2007 WL 4643884, at *2 (N.D. Ill. 2007) (*nolle prosequi* order after a complaining witness failed to appear, and the state court refused to continue proceedings, was not consistent with innocence).

The non-appearance by a witness doesn't tell you anything, one way or the other, unless you know *why* the witness didn't show up. Maybe the witness chickened out because the charges were phony. Or maybe there is a more mundane explanation. Maybe the witness was busy, or forgot, or was out of town, or died, or got sick, or who knows what. Maybe the police officer didn't attend because the officer was busy testifying in the courtroom down the hall.

Plenty of people have gotten out of speeding tickets when a police officer doesn't show up at the hearing. It doesn't mean that the driver deserved a Gold Star when it comes to obeying the speed limit.

If a court only knows that a witness didn't appear, then the dismissal does not seem to indicate innocence. After all, the witness could have failed to appear because the person is innocent. Or the witness could have failed to appear even though the person is guilty as sin. The non-appearance, in and of itself, is a neutral fact, and tells you nothing.

Even so, the complaint tells the only story that matters, and the complaint doesn't say anything about why the case was dismissed. True, this Court could take judicial notice of court filings. But courts have discretion about when and where to take judicial notice. And here, given the limited information, this Court declines the invitation to take judicial notice of the reasons why the state court dismissed the case.

## II. The Federal Malicious Prosecution Claims

Jones also brings two malicious prosecution claims under federal law. One claim alleges an unlawful seizure under the Fourth Amendment. The other claim alleges a deprivation of his parental rights under the Fourteenth Amendment.

This Court will address each claim separately. But first, this Court will address two arguments that apply to both claims: qualified immunity, and the statute of limitations.

### A. Qualified Immunity

Keehma moves to dismiss based on qualified immunity. That argument runs into a now-familiar problem. Once again, Keehma relies on material outside the complaint.

Qualified immunity is an affirmative defense. *See Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2022). A plaintiff does not have to plead around an affirmative defense in a complaint. *See Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022); *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). "Because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

A complaint can plead itself out of court. Dismissal is appropriate if the complaint itself shows the existence of qualified immunity. *See Hanson v. LeVan*, 967 F.3d 584, 591 (7th Cir. 2020).

Here, Keehma does not argue that the complaint itself establishes qualified immunity. Instead, Keehma argues that he had qualified immunity because he was enforcing a court order. *See* Brf., at 10 (Dckt. No. 24). Once again, he relies on facts that don't appear in the complaint itself.

Again, that argument will have to wait. Defendant is going outside the pleadings, but the complaint itself is what matters.

### B. The Statute of Limitations

Keehma moves to dismiss based on the statute of limitations. Keehma points out that the incident took place in 2021, but Jones did not file suit until 2024.

The complaint might have problems, but untimeliness isn't one of them. A malicious prosecution claim accrues upon the termination of the criminal proceedings, not upon the arrest. "Under both state and federal law[,] a malicious prosecution claim does not accrue until the criminal proceeding that gave rise to it ends in the claimant's favor." *See Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013) (collecting cases). Put another way, a "claim for malicious prosecution accrues when the underlying criminal prosecution is terminated without a conviction." *See Smith v. City of Chicago*, 2022 WL 2752603, at *1 (7th Cir. 2022).

Jones's criminal proceedings ended on December 6, 2023. *See* Am. Cplt., at ¶ 2 (Dckt. No. 15). He filed the complaint in May 2024.

Section 1983 has no statute of limitations, so courts borrow the statute of limitations from the most analogous state-law claim. *See Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019). Courts have disagreed about whether the statute of limitation is one year or two years for a malicious prosecution claim under section 1983. *See Jackson v. City of Chicago*, 2024 WL 5264703, at *4 (N.D. Ill. 2024) (applying a two-year statute of limitations); *with Shelton v. Wright*, 2011 WL 856811, at *3 (N.D. Ill. 2011) ("The Illinois Tort Immunity Act establishes a

one-year statute of limitations for civil actions against employees of a local entity for any injury."); *Jones v. City of Chicago*, 2017 WL 6733677, at *3 (N.D. Ill. 2017) (holding that a "State law malicious prosecution" claim against police officers was "subject to a one-year statute of limitations.").

Either way, it makes no difference. Jones filed suit only six months after he prevailed in the criminal case. He filed suit with plenty of time to spare.

*    *    *

Qualified immunity and the statute of limitations are not reasons to dismiss this complaint. But Keehma also makes a few arguments that are specific to each of the two claims.

This Court will address the malicious prosecution claim under the Fourth Amendment, before addressing the claim under the Fourteenth Amendment.

### C.      Malicious Prosecution – Fourth Amendment (Count II)

In Count II, Jones alleges malicious prosecution under the Fourth Amendment. Jones claims that Keehma seized him by placing him under arrest.

The Supreme Court recognized a federal claim for malicious prosecution under the Fourth Amendment in *Thompson v. Clark*, 596 U.S. 36 (2022). A federal claim of malicious prosecution requires a court to "'first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted.'" *See Neita v. City of Chicago*, 148 F.4th 916, 939 (7th Cir. 2025) (quoting *Thompson*, 596 U.S. at 43). The most analogous tort is, you guessed it, malicious prosecution.

A common law claim of malicious prosecution requires a plaintiff to prove "'(i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in the acquittal or discharge of the accused.'" *Id.* (quoting *Thompson*, 596 U.S. at 44); *see also Evans v. Matson*, 2024 WL 2206638, at *2 (7th Cir. 2024).

But that's not all. To bring a malicious prosecution claim under the Fourth Amendment, a plaintiff also must prove a seizure. "Because this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff." *Thompson*, 596 U.S. at 43 n.2; *see also Neita*, 148 F.4th at 939.

After all, the Fourth Amendment is about unreasonable searches and seizures. No search or seizure, no Fourth Amendment claim.

A seizure from an arrest itself – *before* the filing of criminal charges – does not count as a seizure for purposes of a malicious prosecution claim. The question is whether the plaintiff "was

11

detained *after* 'legal process.'" *See Neita*, 148 F.4th at 939 (emphasis added); *King v. City of Chicago*, 2026 WL 522586, at *2–3 (N.D. Ill. 2026).

And that's where the wheels fall off for Jones. To bring a claim, Jones must allege that the prosecution led to a seizure. But here, he does the opposite. He alleges that he was seized when he was arrested, and then charged with a crime. *See* Am. Cplt., at ¶ 93 (Dckt. No. 15) ("The prosecution resulted in a seizure by arresting the Plaintiff without legal justification.").

That's backwards. A Fourth Amendment malicious prosecution claim requires a plaintiff to show that the prosecution itself led to the seizure. Again, a plaintiff has to "prove that the malicious prosecution *resulted in* a seizure of the plaintiff." *See Thompson*, 596 U.S. at 43 n.2 (emphasis added).

A prosecution can't "result[] in a seizure" if the seizure took place before the prosecution. *Id.*; *see also Neita*, 148 F.4th at 939 ("'Because this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff.'"); *King v. City of Chicago*, 2026 WL 522586, at *2–3 (N.D. Ill. 2026) (holding that the plaintiff "fail[ed] to adequately plead that the allegedly malicious prosecution 'resulted in [King's] seizure, that is, a seizure *beyond* the initial arrest and detention at the police station'") (alterations in original) (internal citations omitted).

A pre-prosecution seizure isn't a seizure *resulting from* the prosecution. A seizure after the prosecution counts, but a seizure before the prosecution doesn't.

Jones also suggests that he was seized because the criminal case led to bond conditions. That theory won't get him anywhere, either.

Keehma attached Jones's bond conditions to his motion to dismiss. *See* Bail Bond Deposit (Dckt. No. 24-3). Jones mentions his "pretrial" or "bond" conditions repeatedly throughout his complaint. *See* Am. Cplt., at ¶¶ 2, 82, 85 (Dckt. No. 15). So, this Court can take judicial notice of Jones's conditions. *See Andersen*, 821 F. App'x at 627.

All of "Standard Conditions A" were checked by the state judge. Those conditions required Jones to appear at court hearings, obey court orders, seek permission before leaving Illinois, report any change of address, obey the law, and surrender himself and any firearms to custody if he pled guilty or lost at trial. *See* Bail Bond Deposit (Dckt. No. 24-3).[1]

So Jones received the standard conditions of bond. And "standard bond conditions, like those that [the plaintiff] experienced, do not constitute a seizure. In fact, the Seventh Circuit recently confirmed that run-of-the-mill bond conditions – like a restriction on leaving the state – do not count as a seizure." *See Zhang*, 2022 WL 615015, at *19.

Courts widely hold that run-of-the-mill bond conditions do not constitute a seizure. *See, e.g.*, *Smith v. City of Chicago*, 3 F.4th 332, 340 (7th Cir. 2021), *rev'd on other grounds*, 142 S.

---

[1] Jones's bond conditions also restricted him from visiting his daughter's school. Since that forms the basis of Count III, the Court addresses that condition later.

Ct. 1665 (2022) ("We now conclude that the standard bond conditions that Smith experienced did not constitute a continuing seizure."); *Artman v. Gualandri*, 2021 WL 2254961, at *4 (N.D. Ill. 2021) (stating that bond conditions requiring a defendant to appear in court, not violate any state law, and post a security "appear to fall into the category of routine conditions that are insufficient to substantiate a Fourth Amendment claim"); *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) (holding that court conditions compelling the defendant to attend court hearings, restricting her travel out of the state, and requiring an interview with probation were not a seizure); *King*, 2026 WL 522586, at *3 ("Without outright detention to rely on, King points only to attendance at required court hearings and standard travel restrictions. Put simply, however, those restrictions on liberty do not qualify as a Fourth Amendment seizure."). Otherwise, just about every criminal case would count as a seizure, even if the defendant is not detained.

Just last year, the Seventh Circuit rejected the notion that "having to post bond" and "appear in court" qualify as seizures. *See Neita*, 148 F.4th at 939. And without an allegation that Jones "was, in fact, detained even after the commencement of legal process," he cannot allege a seizure. *Id.*

Bond conditions might restrict liberty. But not all restrictions on liberty are *seizures*. A restriction on a person's liberty is a necessary but not a sufficient condition of a seizure.

It's hard to see how a person could be "seized" when they're free to hit the town, grab a latte at Starbucks, and stroll around the neighborhood.

Maybe, just maybe, bond conditions could be so restrictive that they amount to a seizure. A condition that is the equivalent of "go to your room and sit in a chair" might make the cut. The Seventh Circuit adopted a "case-by-case approach" to this issue in *Smith* because the Court of Appeals could not categorically say that a bond condition is never a seizure no matter what.[2] *See Smith*, 3 F.4th at 342.

Here, Jones doesn't allege anything close to a seizure. He alleges that he faced routine bond conditions. And that's not enough to give rise to a Fourth Amendment violation.

---

[2] The Seventh Circuit recently commented that it is "unsettled" whether bond conditions can constitute a seizure. *See Ash v. City of Aurora*, 2026 WL 446968, at *2 (7th Cir. 2026). *Ash* involved a bond condition that banned out-of-state travel. *Ash* cited *Mitchell v. City of Elgin*, 912 F.3d 1012 (7th Cir. 2019), and, derivatively, the Supreme Court's *Manuel* decision. *See Manuel v. City of Joliet*, 580 U.S. 357 (2017). In *Manuel*, the Supreme Court overturned Seventh Circuit precedent saying that the Fourth Amendment doesn't apply after the start of legal process. *See Manuel*, 580 U.S. at 367–68. But the Supreme Court addressed only *when* the Fourth Amendment applies, not *how* it applies or *what* it means. Put another way, the Supreme Court did not address what constitutes a seizure under the Fourth Amendment. And in particular, the Supreme Court did not address whether a bond condition constitutes a seizure, and if so, when. So, *Manuel* and its progeny do not call into question the longstanding precedent in the Seventh Circuit that standard bond conditions do not constitute a seizure under the Fourth Amendment.

### D.     Malicious Prosecution – Fourteenth Amendment (Count III)

In Count III, Jones alleges malicious prosecution under the Fourteenth Amendment.  He claims that Keehma deprived him of his parental rights.

Jones claims that he "was subjected to bond conditions that prohibited him from seeing or contacting his own daughter, despite no lawful justification."  *See* Am. Cplt., at ¶ 85 (Dckt. No. 15).  He described "[t]his court-imposed restriction" as being "prompted entirely by Keehma's unlawful actions."  *Id.*

For starters, it's not clear that Jones can bring a malicious prosecution claim under the Fourteenth Amendment.  The Supreme Court has recognized a malicious prosecution claim under the Fourth Amendment.  But the Supreme Court has left open whether the Due Process Clause of the Fourteenth Amendment can give rise to a malicious prosecution claim, too.  *See Thompson*, 596 U.S. at 43 n.2 ("It has been argued that the Due Process Clause could be an appropriate analytical home for a malicious prosecution claim under § 1983 . . . .  But we have no occasion to consider such an argument here.") (citation omitted).

The Seventh Circuit has noted the uncertainty.  "Whether the Fourteenth Amendment's procedural due process component ensures a right to be free from malicious prosecution is an open question."  *See Jones v. York*, 34 F.4th 550, 564 n.8 (7th Cir. 2022) (citing *Thompson*, 596 U.S. at 43 n.2).

Years ago, the Seventh Circuit rejected federal malicious prosecution claims under the Fourth and Fourteenth Amendments because plaintiffs could sue for malicious prosecution under state law.  *See, e.g.*, *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010); *see also Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011).

That rule has "since [been] abrogated" for claims under the *Fourth* Amendment, but no decision has abrogated that rule for claims under the *Fourteenth* Amendment.  *See Coleman v. City of Chicago*, 2025 WL 2410325, at *20 (N.D. Ill. 2025) (Pacold, J.) (citing *Manuel v. City of Joliet*, 580 U.S. 357 (2017)); *see also Thompson*, 596 U.S. at 42.

Several courts in this district have held that *Thompson* "did not disturb the Seventh Circuit's malicious prosecution precedent as to the Fourteenth Amendment."  *See Sneed v. Village of Lynwood*, 2022 WL 5116464, at *3 (N.D. Ill. 2022); *see also Navarro v. City of Aurora*, 2022 WL 1988990, at *2 (N.D. Ill. 2022) (same); *Gecht v. Guervara*, 2024 WL 4299982, at *9 (N.D. Ill. 2024) (same); *Del Prete v. Vill. of Romeoville*, 2025 WL 446260, at *16 (N.D. Ill. 2025) (same).

Those courts have dismissed Fourteenth Amendment claims because those plaintiffs had adequate remedies under state law.  *See, e.g.*, *Sneed*, 2022 WL 5116464, at *3.

This Court takes the same approach.  *Thompson* did not overrule this Circuit's precedent about malicious prosecution claims under the Fourteenth Amendment.  The Supreme Court simply said that it had "no occasion to consider" whether the "the Due Process Clause could be

14

an appropriate analytical home for a malicious prosecution claim under § 1983." *See Thompson*, 596 U.S. at 43 n.2.

Circuit precedent applies unless and until it doesn't. And the Supreme Court and the Seventh Circuit haven't said that it doesn't.

Even so, Jones doesn't bring a malicious prosecution claim and allege a violation of procedural due process. Instead, he alleges a violation of substantive due process.

The "fundamental right to familial relations is an aspect of *substantive* due process." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011) (emphasis added); *see also Mirabelli v. Bonta*, 607 U.S. ---, 146 S. Ct. 797, 803 (2026) ("Under long-established precedent, parents – not the State – have primary authority with respect to 'the upbringing and education of children.'"); *id.* at 804 (Barrett, J., concurring) ("[T]he doctrine of substantive due process has long embraced a parent's right to raise her child, which includes the right to participate in significant decisions about her child's mental health."); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399–400 (1923).

If anything, substantive due process is a softer footing for a malicious prosecution claim.

Generally, a plaintiff "cannot invoke the substantive due process clause where state laws provide an adequate post deprivation remedy for the complained-of conduct." *See Fox*, 600 F.3d at 841; *see also Ray*, 629 F.3d at 664. Here, an adequate state remedy exists. Jones can – and did – sue for malicious prosecution under state law.

Other problems jump off the page of the complaint.

For starters, the bond conditions did not terminate Jones's parental rights. The complaint alleges that he "was subjected to bond conditions that prohibited him from seeing or contacting his own daughter, despite no lawful justification." *See* Am. Cplt., at ¶ 85 (Dckt. No. 15).

Not so. The state court simply ordered Jones to "stay away Troy/Shwd School." *See* Jones's Bail Bond Deposit (Dckt. No. 24-3). The condition referred to Troy Shorewood Elementary School, meaning the school where Jones got arrested. *See* Am. Cplt., at ¶¶ 7, 45 (Dckt. No. 15). The condition placed no other limitations on Jones contacting his daughter.[3]

Under the Fourteenth Amendment, parents have a right to "establish a home and bring up children." *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The "right to familial relations" protects against the "forced separation" of parents and children. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1018 & n.14 (7th Cir. 2000).

---

[3] "To the extent an exhibit or a judicially noticed court document contradicts the amended complaint's allegations, the exhibit or court document takes precedence." *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 934 (N.D. Ill. 2012) (citing *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007)). So, this Court uses the actual bond deposit form in its analysis.

Jones's bond conditions simply restricted him from revisiting the school. So, "the State" did not "inject itself into the private realm of the family to further question the ability" of Jones "to make the best decisions concerning the rearing" of his daughter. *See Troxel v. Granville*, 530 U.S. 57, 68–69 (2000). The bond condition did not affect Jones's interest in "the care, custody, and control of" his child. *Id.* at 65.

What's more, Jones can't sue Keehma based on the fact that the prosecution led to bond conditions. But Keehma didn't impose the bond conditions – the judge did.

Section 1983 creates personal liability for the state official's own acts, not the decisions of someone else. To establish liability under section 1983, "the plaintiff must show that the relevant official 'caused the constitutional deprivation at issue' or 'acquiesced in some demonstrable way in the alleged constitutional violation.'" *See Gonzalez v. McHenry County*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)).

Put another way, a plaintiff must allege that the individual defendant "'caused or participated in a constitutional deprivation.'" *See Craddock v. Pfister*, 2022 WL 1499808, at *4 (N.D. Ill. 2022) (quoting *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005)).

Claims for "malicious prosecution under section 1983 requires demonstration of both but-for and proximate causation." *See* 14 C.J.S., Civil Rights § 44 (2025); *see also Hunter v. Mueske*, 73 F.4th 561, 567–68 (7th Cir. 2023) ("In assessing causation in § 1983 cases, we look to general principles of causation from tort law.").

The "acts of independent decision-makers, such as prosecutors, grand juries, and judges, may constitute intervening superseding causes that break [the] causal chain between [a] defendant-officer's misconduct and [the] plaintiff's" constitutional violation. *See* 14 C.J.S., Civil Rights § 44 (2025); *see also Brown v. City of Chicago*, 2025 WL 2785426, at *18–19 (N.D. Ill. 2025) (applying the tort doctrine of intervening causes to a section 1983 claim).

Judges, not police officers or prosecutors, impose bond conditions. *See* 725 ILCS 5/110-5. Jones does not allege that Keehma played any role in the bond conditions, apart from bringing the charges themselves.

Simply put, police officers aren't liable for bond conditions because police officers don't impose bond conditions. Judges do.[4] *See Duncan v. Fapso*, 2006 WL 328262, at *4 (N.D. Ill. 2006) ("However, his bail was set by a state court judge and not by [the officer]. A police officer is not liable for the actions of a court.").

---

[4] Before Jones gets any ideas, he should know that the state court judge "is immune from suit for that judicial action." *See Hendrix v. Garcia*, 2024 WL 1104777, at *2 (7th Cir. 2024) (citing *Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978)); *Conney v. Rossiter*, 583 F.3d 967, 969 (7th Cir. 2009) (holding that a state court judge involved in plaintiff's child custody proceedings was absolutely immune from section 1983 liability).

In an attempt to save his claim, Jones cites some broad language from *Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000). *See* Pl.'s Resp., at 16 (Dckt. No. 29). But *Brokaw* can't save the day.

In *Brokaw*, the Seventh Circuit held that an "official causes a constitutional violation if he sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *See Brokaw*, 235 F.3d at 1012.

But the defendants in *Brokaw* misled the judge, and that misrepresentation led to family separation. *Id.* (concluding that a complaint stated a claim when the case workers "knew the allegations of child neglect were false, or withheld material information, and nonetheless caused or conspired to cause child's removal").

Cases that follow *Brokaw* often involve allegations that a party misled the court itself. *See, e.g.*, *Oleszczak ex rel. C.O. v. Illinois Dep't of Children and Family Servs.*, 2018 WL 3428102, at *6 (N.D. Ill. 2018) (denying a motion to dismiss when the state official "fed false information" to the people she interviewed, and "fabricate[d] evidence" in connection with a child removal); *Hatch v. Indiana Dep't of Child Servs.*, 2017 WL 4760607, at *2 (N.D. Ind. 2017) (denying a motion to dismiss when the complaint "allege[d] that the Defendants made factual misrepresentations in order to unfairly portray him as a drug addict"); *Young v. Sproat*, 2016 WL 659657, at *3–4 (C.D. Ill. 2016) (denying a motion to dismiss where the plaintiff alleged that the defendants deprived her of her parental rights "based on knowingly false information").

That's not what Jones alleges here. He doesn't allege that Jones fabricated evidence and caused the state court judge to take away his parental rights based on false pretenses. So he has no malicious prosecution claim under the Fourteenth Amendment.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. The motion to dismiss the state-law claim is denied. The motion to dismiss the federal claims under section 1983 is granted.

Date: March 31, 2026

_____

Steven C. Seeger
United States District Judge

17